Paul, case number 23-14-13, United States v. Antonio Mizzell Clark. Mr. Clemente, whenever you're ready. Thank you, your honors. Good morning. May it please the court. My name is Matthew Clemente, and I represent the appellant, Antonio Mizzell Clark. And I would request two minutes for rebuttal. Granted, in his concurring opinion in United States v. Perez, Judge Bibas wrote that judges are not editors, yet that is exactly what the government in this case is asking this court to do. The government invites the court to edit the phrase possession in connection with, to include receipt in trade. Now, you're not disputing possession, you're disputing the in connection with piece, correct? Correct. All right. So, why does it matter that the gun was the motivating factor of the crime? Why isn't that enough? He says he wouldn't have given the drugs if he didn't want to buy the gun, and to buy the gun, you got to take it into possession. Why isn't that enough? So, I don't know if that is what he said. I think what's really the facts of record are really what's contained in the PSR, which is pretty sparse. And I think all that is known about the transaction is the fact that during one of the gun transactions, one of the occasions where Mr. Clark received a firearm, that there were drugs involved. We don't know anything else. To get to your Honor's question, I think it does matter because the direction of the transaction matters. I think that's something, although it dealt with use, that Watson established. Here, we have sort of a... Watson was about use. That's 100% correct. However, I think the logic still applies. We have to do an analysis of the natural language and see if the natural language fits the situation. And particularly... Possess? Possession and connection with. I think that's the question. And, you know, this Court has said previously that essentially, you know, we're not contesting that that's a broad standard, but it does have limits, right? But use is a directional verb. It requires something active, not passive. But possession doesn't have, like, a direction where you're possessing upon somebody or being possessed by... It's just, you possess it, whether at the beginning of the transaction or at the end of the transaction. So how is it that in connection imparts some kind of directional or sidedness that it's only in connection with on one side? I mean, it's different from use in that of... Because possession is... To possess is a different kind of verb. Correct. And I think where you get the directionality, if that's the word, is from the Court's precedent where it says that when you look at the whole phrase, what's important is the gun must have facilitated or have the potential to facilitate. And I think that's where the analogy picks up, where it's the government's burden to show that the gun had a role in facilitating the offense. Where is the facilitation as part of possession, not as part of use? So I think there is no facilitation. I think the gun is simply an object of trade. I mean, where are you getting the facilitation language from? Oh, so it starts, and there's a loony line of cases that this Court has that's carried throughout. I think it's incorporated within the guidelines in the commentary that, you know, essentially that's the standard. And it's our position that although, you know, that's a broad standard that can be easily met in a lot of typical drug trafficking cases, this is an atypical case because it's not the case where... Looney's are pretty broad. It says construed expansively, causal or logical relationship. You know, there's that dispute in Perez, but Looney suggests maybe even beyond causal logical. So, but for the gun, there wouldn't have been a deal here. Doesn't that make it a causal relationship end of story? I don't believe so because, you know, while it undoubtedly is a broad phrase, facilitate or potential to facilitate, the Court said in Looney essentially just having the gun, even if it's not displayed, is enough. But there are limits to how far we can stretch this notion of facilitation, potential to facilitate. For instance, this Court has repeatedly stated, quote, from a case called West from, I believe, 2011, Looney should not be read to imply that simply possessing a firearm during the commission of another felony offense is sufficient to invoke the enhancement. So there has to be more than just possession, right? That's one limit. Although not applicable, you know, the Court has said there has to be some evidence that suggests that the use of the gun wasn't accidental or coincidental. And it's our belief that when... Okay, it's not accidental or coincidental here. Right. I'm just saying that's another potential limit. So really, I think the heart of this... But there are limits. Even if you say that this is facilitation, it won't capture accidental or incidental... It won't capture the things that you just mentioned. It's not that there are no limitations, right? Right. That's... And I think that's where, you know, the center of our argument is that this Court said, for instance, in a case called Gregory, that there must be something beyond speculation that the gun played a role. And I think it's worth taking a step back and looking at the rationale of Looney, which is that, you know, so my understanding of the case law is in just simply possessing the crime is not enough. And outside of the drug trafficking context, there has to be something more to establish that the gun played a role. Right? What Looney says and what this Court and other courts have said since is, you know, in your typical drug trafficking situation where there's facts to support that the gun played a role. So, you know, when a drug dealer is going to a drug sale and has the gun on him, right, and there's an exchange of money for drugs, the gun facilitated that transaction. Here, we don't have that same logic, right, because the gun isn't... You know, there's no facts to say that Mr. Clark was protected by owning the gun. There's no facts about what he intended to do with the gun. And so I think this is sort of an atypical case that's more in line with, so in this case, Gregory, which dealt with counterfeit currency, right, where the Court said that, again, simply possessing a gun is not enough. And similarly, I believe it was in West where there was a case involving simple possession as opposed to drug trafficking. And the Court in West said, you know, what I think is similar between this case and West is how sparse the record is. We really have no information about the particulars of the drug sale. We don't know, for instance, why drugs were used as currency in this case. It could have been incidental. And so I think, given the factual limitations of the record, the government... But they were used, as if. Even if maybe they would have been happy to do something else, they chose to use the drugs. There is possession that they were... They bore a causal or logical relationship to the crime. That's enough under Loney. I don't know that Loney went that far. I mean, I don't think this Court has dealt with this question before. I know other circuits have. But I think it's an open question here. And the Court really has to, I think, look to the plain language and see if it would make logical sense or would fit practical English to say that the gun in this case facilitated the transaction. I mean, we wouldn't say, as I put in our briefs, I sort of try to mimic some of the Loney examples, which the government doesn't address at all. And perhaps concedes that it's like a stretch to say that a gun, where you receive it, is facilitating the transaction. And so I believe that the limitations of the record are really key here. And in the cases where the Court has ruled with the appellant defendant, I think that's a common through line. Where, really, the question is, is there more than just speculation? A sentencing court can make reasonable inferences based on the record. But is there factual support for the government's position? And then, in this very narrow question of, is receipt and trade possession in connection with, we have to look to the plain language. And so the government doesn't deal with any of these natural language arguments. The government raises, for the first time on appeal, an argument about the Perez case and application note 14B, which discusses close proximity. I mean, the record is so sparse here. We don't have, I don't think the sentencing court could have made a factual finding that there was ever even a proximity between the drugs and the guns. We could imagine a situation where there's consignment. Or, as I hypothesize in our reply brief, it could have been that the drugs were given one day and the gun was received another. It's just, I think this court has a very sparse record to contend with. And I think it ultimately favors Mr. Clark because it's the government's burden to establish some connection. And so, additionally, the government mentions the Navarro case and submits that it's binding. There's a case I probably should have mentioned in my brief. So Navarro dealt with primarily a separate question. I think it's about nine pages long and eight pages of it we're discussing. There was some dispute and a circuit split back in the time of Navarro about what another felony offense meant. And so that was the focus of that case. And since then, the guidelines were amended. And in a case called Keller, the court said essentially that the main holding in Navarro is no longer valid in light of Amendment 691 to the guidelines. And further, the court, in a footnote in Keller, cast doubt on, quote, whether anything remains of Navarro in that line of cases. Which is a question that it says that it left for another day. And perhaps this is the day. And our position is that really there's nothing left of Navarro because, number one, most of the analysis is thrown out by an amendment to the guidelines. But, number two, Navarro assumed that trading a gun for drugs is the same as trading, you know, the inverse. And Watson rejected that proposition. So it's our contention that any remaining precedential value in Navarro is, you know, no longer. And essentially this court is free to make its own determination. And I see my time is sort of dwindling here. But I think, you know, I can't emphasize enough how important I believe the sparse nature of the record is in this case. And I think as the government, you know, I mean, it's easy to think about all the things we don't know about the transaction where Mr. Clark received the firearm. We don't know about dates. As I said, we don't know why drugs were involved at all. It seems like it was just used as currency. We don't know the quantity of drugs. I mean, really, we don't know the type of drugs or even if they were scheduled, really. And so I think as the government presents to the court, the court should scrutinize are the factual allegations made by the government rooted in the record or is it just the impermissible speculation that West and other courts have discussed. Because again, it's their burden and we submit that the government simply did not meet that burden. That's all I have unless there's any other questions. Thank you. We'll get you up on rebuttal. Thank you. Mr. Bannon, whenever you're ready. Good morning. May it please the court. Patrick Bannon, Assistant U.S. Attorney for the Appellate United States of America. I'd like to start by just noting very significantly that this court has previously affirmed the application of this exact sentence enhancement over the same objection in a nearly identical situation. In the Navarro case, which the appellant touched on briefly, as here, the appellant admitted that he possessed a firearm and admitted that he traded drugs for that firearm. How do you respond to their argument that Navarro doesn't hold up based on the natural language analysis? How do you respond to that? Excuse me? How do you respond to his argument about natural language? He says Navarro doesn't hold up when you use, when you think about the natural language of this. How do you respond to that? Well, I think, you know, Navarro addressed that in the opinion where it said in addressing whether the connection, whether the firearm was possessed in connection with the drug trafficking offense, that they could easily answer that question in the affirmative because the possession of the firearm facilitates the drug transaction specifically because the firearm serves as the item of trade. So in the drug trafficking transaction, I believe Judge Bibas got to this point earlier that, you know, the possession of the gun is the but-for factor in that drug trafficking transaction. So that constitutes the possession in terms of the language of the sentencing enhancement. All right. So Navarro helps you if it remains good law here. Your friend on the other side says it's unsettled by Watson, but does Watson touch it as to possession? Does Watson touch it as to use as well? So, no, Your Honor, I think Watson dealt specifically with use. It did not deal with the possession prong. So the fact that, you know, Watson found that trading drugs for a gun did not meet the use prong of the 924C provision, or excuse me, statute, that Navarro still remains good law and, you know, specifically because Navarro deals with possession and not use. And Watson was very specific in its opinion that it was not addressing the possession prong. It was specifically addressing the use prong. And I think you see in subsequent case law from other circuits that when they've addressed this possession issue in the 924C context, post-Watson, they've uniformly come to the conclusion that it constitutes possession, even in light of Watson. And I think, you know, Navarro has also been cited by this court, including in the West case, post-Watson, as for support, you know, in terms of the possession prong of the enhancement. So I don't think the effect that Watson has is what, you know, Appellant argues. And I think also, you know, in terms of addressing the issue of being able to sort of ignore Navarro now in light of Watson, you know, Appellant makes the case that somehow Watson rejected Smith, and I don't think that's the case at all. I think Smith was addressed by Watson. Watson recognized it was a different situation. It said in the case that, you know, the government's argument in that case relied upon Smith remaining good law, and they agreed with that, you know, and it proceeded to, you know, address the use issue. But I don't think the Watson case in any way rejected Smith. I think it recognized the applicability of Smith, but just recognized that it was a different situation in this use context. So the argument that Navarro somehow relied on Smith, and then Smith was rejected, and now Navarro can just simply be ignored, I don't think, you know, characterizes that line of cases correctly, because that's simply not what happened in Watson. And, you know, Smith has still remained good law. It's been cited widely, including in subsequent cases in this court. The Perez case cited it and discussed it at length. So, you know, I think the issue that, you know, Navarro was somehow, you know, can be ignored or has somehow been overruled or implicitly overruled by the Supreme Court cases in Watson or in any other case, I think, you know, just mischaracterizes those cases. I think to get to the Keller case, which Appellant mentioned as well, that case dealt specifically with another felony offense aspect of the Navarro holding, and, you know, that is something that's not being disputed here, the fact that there was another felony offense. And Appellant admitted as much in his argument that, you know, it's possession and connection with. So the fact that the Keller case recognized this, excuse me, this sentence enhanced, or excuse me, the modification to the guidelines, it was reflecting this another felony offense aspect and not the in possession with aspect. So I think the Keller case is pretty distinguishable there. I don't think it deals with Navarro's addressing of the in connection with. And I think that's, you know, shown to be the case by the fact that Navarro was later than cited by cases like West for this in connection with. What about the subsequent transactions where Mr. Williams sent the guns to various other people, arguably with knowledge at that time that they would commit other felonies with them? Does that fall under the language of in possession with connection with, in connection with? So I think that there's multiple arguments that could be raised that the sentence enhancement should apply. I think on appeal, we are focusing on the possession in connection with, based on the fact that Mr. Clark traded drugs for the guns. And in light of the Navarro case, we think that the sentence enhancement is appropriate on those grounds. There was some dispute in the district court whether Mr. Clark had knowledge that the guns would be used in relation to a further felony offense after trafficking the guns. But I think the court doesn't need to get to that. That would only offer some further support. I don't think the court needs to reach that because I think the possession in connection with prong of the sentence enhancement is very clearly met here in light of Navarro. And I don't think, you know, as a felon argues, that Watson or any other case does anything to address that. Anything else, Judge Walt? Thank you very much. I believe you reserved two minutes for rebuttal, Mr. Clemente. Thank you, Your Honor. So I'd like to start with the question that Judge Roth asked about, you know, the reason to believe clause. And wasn't there some facts to suggest that Mr. Clark additionally had reason to believe that the guns were going to be used for illegal means, the other clause of the guideline? You know, there's a case, United States v. Circarillo. It's a Third Circuit case from 2002 that I think is applicable here, which essentially says that where you don't know who they sold the guns to, where the guns went, or to whom they sold the guns, that, you know, similar to this case, where the records, again, so sparse, a sentencing court goes beyond reasonable inferences and jumps into just pure speculation. And the court found that the guideline didn't apply. And we think just as the government, in making that argument, had no factual support, additionally had no factual support in suggesting that the guideline could be applied through the in connection with clause. Well, but that's if we have to get into the specifics. If the government is right that Watson, that Navarro is still good law, at least as to possession, then it doesn't matter what the guideline is. To respond briefly on Navarro, yes, a very superficial reading of Watson, you know, is that it only applied to use, right? But what I want to suggest is that if you look at the logic of Watson and the way it did the textual analysis, the analysis is the same, that analogies can be drawn from between use as well as facilitation or the potential to facilitate. And my last point is, briefly, the appellee mentioned other circuits. They cite a couple of other circuits in their brief. But what's significant is, as Judge Bevis noted in Holland versus the Warden of Canaan, this court has not made any determination with regard to whether or not a receipt in trade violates, I see my time's running out, if I could just finish the point. So in the context of 924C, other courts have said a receipt in trade does violate 924C. As Judge Bevis noted, this court has not made that determination. And the other circuits that have addressed the receipt in trade in the context of this enhancement have also made that finding with regard to the 924C. So I think the persuasive authority of those other circuits is eroded because it rests in part on a holding that this court has not made. I hope I made that point clearly. But, you know, the fact that a 924C wouldn't necessarily be a violation in this circuit, I think, undermines the arguments of the other circuits where that's an assumption based on their previous precedent. Thank you.